UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BLUE HILL SPECIALTY
INSURANCE COMPANY                                                     PLAINTIFF

V.                                          CIVIL ACTION NO. 3:24-CV-747-KHJ-MTP

CHRISTOPHER ROBERTSON, et al.                                      DEFENDANTS

ORDER

Before the Court is Plaintiff Blue Hill Specialty Insurance Company's [13, 14, 15] Motions for Default Judgment. For the reasons stated below, the Court grants the motions.

I.     Background

Blue Hill filed this declaratory-judgment action to clarify its duties to defend and indemnify Defendants Double W Trucking, LLC, and James Whitten, III, following an automotive accident. Compl. [1] ¶¶ 7, 27. In early 2023, Blue Hill underwrote a $1,000,000 [1-2] Progressive Commercial Auto Liability Insurance Policy naming Double W as the insured. *See* [1-2] at 2–3; *see also* [1] ¶ 4 (describing Whitten as Double W's sole member). The [1-2] Policy listed Whitten and Defendant Christopher Robertson as rated drivers, and the auto coverage schedule listed several "insured autos," including two 1997 Kenworth tractor trailers. [1-2] at 3–4, 10. On August 23, 2023, Robertson was driving one of the insured Kenworth tractor trailers when a tire blew out, causing him to lose control of the Kenworth and sideswipe another tractor trailer. [1] ¶¶ 7, 16.

After the accident, in June 2024, Robertson sued Double W and Whitten in Mississippi state court for negligence and gross negligence, seeking both compensatory and punitive damages. *See* Robertson Compl. [1-1] at 1–3; *see also Hollinshed v. Yazoo & M.V.R. Co.*, 55 So. 40, 40 (Miss. 1911) ("An allegation of gross negligence includes negligence."). Robertson claims that Double W and Whitten negligently maintained the Kenworth he was driving, negligently loaded the Kenworth, and failed to train or supervise the employees responsible for maintaining the Kenworth. [1-1] at 2. He also alleges that he suffered "extensive property damage and personal injuries . . . ." *Id.*

As Double W's insurer, Blue Hill filed this action in November 2024 against all three defendants. *See* [1]. It contends that the [1-2] Policy excludes any coverage for Double W or Whitten with respect to the August 23 accident. *Id.* ¶¶ 18–27. Thus, Blue Hill seeks a judgment declaring that it has no duty to defend or indemnify Double W or Whitten against any claims arising from the accident. *Id.* ¶¶ 26–27. It also requests "an order enjoining the [d]efendants and/or other persons from making any claim against the [1-2] Policy for payment under any provisions, regardless of whether such claim is brought through theory of contract, contribution, assignment, or any other legal theory." *Id.* ¶ 27.

II.   Standard

For a plaintiff to obtain a default judgment, (1) a defendant must default; (2) the clerk must enter default; and (3) the plaintiff must move the Court to grant a default judgment. *See Campbell Harrison & Dagley, L.L.P. v. PBL Multi-Strategy*

*Fund, L.P.*, 744 F. App'x 192, 203 n.55 (5th Cir. 2018) (per curiam) (quoting *N.Y. Life Ins. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996)). A defendant defaults by failing to timely answer or otherwise respond to a plaintiff's complaint after proper service of process. *See Rogers v. Hartford Life & Acc. Ins.*, 167 F.3d 933, 937 (5th Cir. 1999); Fed. R. Civ. P. 55(a). But even "when a defendant is in default, a plaintiff is not entitled to a default judgment as a matter of right." *Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022) (citation modified). For one, a court must have jurisdiction to enter a default judgment. *See id.* at 490. And while the "role of a district court in adjudicating a motion for default judgment is limited," *id.* at 492, "the entry of default judgment is committed to the discretion of the district judge." *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977); *see also* Fed. R. Civ. P. 55(b).

As a result, "a court may still deny default judgment if the plaintiff has failed to state a claim on which relief can be granted." *Escalante*, 34 F.4th at 493; *see also* Fed. R. Civ. P. 8(a)(2). The defendant's default merely constitutes an admission of all the well-pleaded, factual allegations in the complaint (other than those related to damages). *Escalante*, 34 F.4th at 492; *see also* Fed. R. Civ. P. 8(b)(6). So to support a default judgment, the well-pleaded facts in the complaint must still satisfy Rule 8(a)(2) by "rais[ing] a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (citation modified); *see also id.* at 498 n.3 (noting that Rule 8(a)(2)'s requirements are less rigorous than Rule 12(b)(6)'s plausibility standard). And when "a case involves

3

multiple defendants, courts may not grant default judgment against one defendant if doing so would conflict with the position taken by another defendant." *Escalante*, 34 F.4th at 495; *see also Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 554 (1872).

Courts also disfavor default judgments, granting them "only when the adversary process has been halted because of an essentially unresponsive party." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citation modified). Thus, courts consider several factors in exercising their discretion about whether to enter a default judgment. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Finally, if a court does grant a default judgment, the relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Generally, courts must conduct an evidentiary hearing before awarding unliquidated damages. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993); *see also* Fed. R. Civ. P. 8(b)(6). But when "the amount claimed is a liquidated sum or one capable of mathematical calculation," a court need not hold a hearing before entering a default judgment. *James*, 6 F.3d at 310.

III.   Analysis

First, the Court reassures itself of its jurisdiction over this declaratory-judgment action. Second, the Court finds that it may and should grant a declaratory judgment in Blue Hill's favor. Third, the Court finds that it should exercise its discretion to grant a default judgment. And fourth, the Court finds that it may

grant declaratory relief without a hearing, but it denies Blue Hill's request for injunctive relief.

A. Jurisdiction

Blue Hill has properly invoked the Court's diversity jurisdiction, and the Court has personal jurisdiction over all the defendants.[1]

Blue Hill has established that diversity jurisdiction exists. *See* [1] ¶¶ 1–5; *see also Frye*, 953 F.3d at 293 ("A claim under the Declaratory Judgment Act is insufficient to confer federal question jurisdiction under 28 U.S.C. § 1331."). "The party seeking to invoke federal diversity jurisdiction bears the burden of establishing both that the parties are diverse and that the amount in controversy exceeds $75,000." *Frye*, 953 F.3d at 293 (citation modified). To that end, Blue Hill has properly pleaded its Illinois citizenship. *See* [1] ¶ 1; *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen Liab. Corp.*, 757 F.3d 481, 483 (5th Cir. 2014). And it has suitably alleged that Robertson, Whitten, and Double W are Mississippi citizens. [1] ¶¶ 2–4.[2]

Likewise, Blue Hill has established that the amount in controversy exceeds $75,000. In a declaratory-judgment action, "the amount in controversy is measured

---

[1] While the justiciability of a declaratory-judgment action implicates subject-matter jurisdiction, the Court analyzes justiciability as an element of Blue Hill's claim for declaratory relief. *See Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 293–94 (5th Cir. 2019); *see also infra* Section III.B.1.a.

[2] Blue Hill pleaded Double W's citizenship as if it were a corporation, but Double W is a limited liability company (LLC). *See* [1] ¶ 4. Courts determine an LLC's citizenship by the citizenship of all its members. *SXSW, L.L.C. v. Fed. Ins.*, 83 F.4th 405, 407–08 (5th Cir. 2023). Fortunately, because Blue Hill alleged that Double W's only member (Whitten) is a Mississippi citizen, [1] ¶¶ 3–4, the Court may conclude that Double W has only Mississippi citizenship.

5

by the value of the object of the litigation." *Frye*, 953 F.3d at 293 (citation modified). "When an insurer seeks a declaratory judgment regarding the coverage provided by an insurance policy, the object of the litigation is the policy and the value of the right to be protected is [the] plaintiff's potential liability under that policy." *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (citation modified). In the underlying litigation, Robertson sued Blue Hill's insured—Double W—seeking compensatory and punitive damages for "extensive property damage and personal injuries . . . ." [1-1] at 2–3. And under Double W's [1-2] Policy, Blue Hill must defend covered losses up to the $1,000,000 policy limit. [1-2] at 3, 14. If Blue Hill were to defend and indemnify Double W in the underlying litigation, the Court finds it likely that Blue Hill's liability under the [1-2] Policy would exceed $75,000.

Lastly, the Court notes its personal jurisdiction over the defendants. "Federal courts may . . . always assume jurisdiction over a defendant in any action in which there is personal, in-state service of process." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 n.2 (5th Cir. 2006). Blue Hill personally served each of the defendants in Mississippi. *See* Robertson Summons [6] at 2; Double W Summons [7] at 2; Whitten Summons [8] at 2.

    B. Merits

The Court first considers whether it may and should decide this declaratory-judgment action. Answering affirmatively in both respects, the Court turns to

whether Blue Hill has stated a claim entitling it to the declaratory judgment it seeks. The Court finds that Blue Hill has done so.

1. Availability of Declaratory Judgment

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "When considering a declaratory judgment action, a district court must engage in a three-step inquiry." *Frye*, 953 F.3d at 294 (quoting *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)). It "must ask (1) 'whether an "actual controversy" exists between the parties' in the case; (2) whether it has authority to grant declaratory relief; and (3) whether 'to exercise its broad discretion to decide or dismiss a declaratory judgment action.'" *Id.* (quoting *Orix Credit All.*, 212 F.3d at 895). Blue Hill has presented a justiciable controversy within the Court's authority to decide, and the Court will exercise its discretion to decide it.

a. Justiciability

The first *Orix* step, the actual controversy requirement, "refers to an Article III case or controversy." *Id.* And the plaintiff "bears the burden of pleading facts demonstrating the existence of a justiciable controversy." *Id.* So the plaintiff must allege facts showing "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (citation modified). The Declaratory Judgment Act

7

"cannot create a cause of action where there is no risk of the future lawsuit from which the plaintiffs seek prospective relief, as there is no case or controversy." *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 932 (5th Cir. 2023). "But so long as the defendant in a declaratory judgment suit can sue the plaintiff for an action the defendant is responsible for (within the scope of the proposed cause of action), the independent cause of action required for a declaratory judgment claim exists." *Id.*

"Under Mississippi law, an insurer's duties to defend and indemnify its insured are distinct and separate duties requiring the use of different standards." *Est. of Bradley ex rel. Sample v. Royal Surplus Lines Ins.*, 647 F.3d 524, 529 (5th Cir. 2011). Both duties are contractual, so an insured may bring a breach-of-contract action against an insurer for failure to fulfill them. *See Sessoms v. Allstate Ins.*, 634 So. 2d 516, 519 (Miss. 1993). And when an insured has a liability policy, a judgment creditor may also garnish the policy by suing the insurer for payment of a covered judgment. *See Com. Cas. Ins. v. Skinner*, 1 So. 2d 225, 226 (Miss. 1941) (en banc).

"An insurer has an absolute duty to defend a complaint which contains allegations covered by the language of the policy, but no duty to defend those claims which fall outside the coverage of the policy." *Est. of Bradley*, 647 F.3d at 529 (citation modified). "When an insured is sued, an insurer's duty to defend is determined solely by comparing the facts alleged in the complaint with the terms of the policy." *Id.* "The interpretation of an insurance policy is a question of law . . . ."

*Id.* (citation modified). Thus, a court can determine the duty to defend at the beginning of a lawsuit. *Id.* at 531.

On the other hand, "an insurer's duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is established, if at all." *Id.* "This is because . . . the duty to indemnify turns on the actual facts giving rise to liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the policy." *Id.* Even so, the Fifth Circuit has recognized that the duty to indemnify can be determined earlier if "the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Fed. Ins. v. Singing River Health Sys.*, 850 F.3d 187, 198 n.6 (5th Cir. 2017) (emphasis removed) (quoting *Farmers Tex. Cnty. Mut. Ins. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (per curiam), and applying its reasoning to Mississippi law); *see also Seneca Ins. v. RREAF Holdings LLC*, 568 F. Supp. 3d 659, 665 (S.D. Miss. 2021) ("If there is no duty to defend, . . . there can be no duty to indemnify.").

Blue Hill has presented a justiciable controversy. It seeks a judgment "declaring that the [1-2] Policy does not provide coverage for any claim arising out of the underlying accident" and "that it is not otherwise obligated . . . to defend, indemnify, respond to, pay, or adjust any claim arising from the accident . . . ." [1] ¶¶ 26–27. As for Blue Hill's duty to defend, "[a]n actual case or controversy exists in declaratory actions on an insurer's liability for an underlying state-court action while the action is still pending." *TIG Ins. v. Woodsboro Farmers Coop.*, 117 F.4th

9

715, 722 (5th Cir. 2024) (citing *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273–74 (1941)). Double W or Whitten can currently sue Blue Hill for failure to defend, and the Court can determine Blue Hill's duty to defend now. *See Sessoms*, 634 So. 2d at 519; *Est. of Bradley*, 647 F.3d at 531. Thus, Blue Hill has shown a substantial and immediate controversy that warrants a declaratory judgment. *See Frye*, 953 F.3d at 294; *Braidwood*, 70 F.4th at 932.

Blue Hill's duty to indemnify may also be justiciable now. Normally, the duty to indemnify remains nonjusticiable until the completion of the underlying litigation. *See Est. of Bradley*, 647 F.3d at 531. Here, any controversy about Blue Hill's duty to indemnify remains contingent on Robertson obtaining a judgment against Double W or Whitten. *See id.* If he does, Robertson could sue Blue Hill to garnish Double W's [1-2] Policy, and Double W or Whitten could sue Blue Hill for failure to indemnify. *See Sessoms*, 634 So. 2d at 519; *Skinner*, 1 So. 2d at 226.

But Blue Hill argues that the [1-2] Policy does not cover any claims from the underlying accident. [1] ¶¶ 23, 26. And a lack of coverage would negate any possibility that Blue Hill would ever have a duty to indemnify. *See Fed. Ins.*, 850 F.3d at 198 n.6. Since interpreting the [1-2] Policy presents only a legal question, the Court can determine Blue Hill's duty to indemnify now if all claims from the accident fall outside the [1-2] Policy's coverage. *See id.* If Blue Hill has any duty to defend, however, the Court must "defer[] resolution of indemnity issues until the liability litigation [is] resolved." *TIG Ins.*, 117 F.4th at 723 (citation modified); *see also Est. of Bradley*, 647 F.3d at 531 & n.5; *Seneca Ins.*, 568 F. Supp. 3d at 665.

10

b. Authority

Under the second *Orix* step, a court has no authority to grant declaratory relief if "(1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in the federal court; and (3) the district court is prohibited from enjoining the state proceedings under [the Anti-Injunction Act, 28 U.S.C. §] 2283." *Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 388 n.1 (5th Cir. 2003).

The Court concludes it can issue a declaratory judgment. Double W and Whitten have not filed state-court suits, and while Robertson has, his suit involves different issues than those presented here. Robertson's state-court suit concerns Double W and Whitten's alleged negligence and potential liability for an automotive accident. *See* [1-1] at 2–3. By contrast, this suit regards Blue Hill's contractual duties to defend and indemnify Double W or Whitten in Robertson's underlying action. *See* [1] ¶¶ 18, 21, 23. Thus, issuing a declaratory judgment here will not effectively enjoin Robertson's state-court action. *See Travelers Ins. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993).

c. Discretion—*Trejo* Factors

At the third *Orix* step, courts must consider whether to decide or dismiss a claim for declaratory relief. *See Sherwin-Williams*, 343 F.3d at 387–88. When an action involves only declaratory relief, a court must apply the *Brillhart* doctrine. *New England Ins. v. Barnett*, 561 F.3d 392, 394 (5th Cir. 2009) (per curiam); *see*

*also Brillhart v. Excess Ins. of Am.,* 316 U.S. 491, 494–95 (1942).[3] Under the *Brillhart* doctrine, "district courts have substantial latitude in deciding whether to stay or to dismiss a declaratory judgment suit" based on "considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286, 288 (1995). The Fifth Circuit has distilled *Brillhart*'s standard into seven nonexclusive factors that guide courts' discretion in accepting or declining jurisdiction over declaratory-judgment actions:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

---

[3] If an action involves any non-frivolous claims for coercive relief, courts must apply *Colorado River* abstention rather than the *Brillhart* doctrine. *See Barnett*, 561 F.3d at 394, 396; *see also Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817–18 (1976). Blue Hill's [1] Complaint requests "an order enjoining the [d]efendants and/or other persons from making any claim against the [1-2] Policy for payment under any provisions, regardless of whether such claim is brought through theory of contract, contribution, assignment, or any other legal theory." [1] ¶ 27. Blue Hill makes no other mention of injunctive relief in its Complaint and offers no briefing on the matter. *See* [1]; [13] ¶ 9; [14] ¶ 9; [15] ¶ 9. At least one other court has found an identical claim for injunctive relief frivolous in this context. *Accident Ins. v. Blanchet*, No. 6:13-CV-387, 2013 WL 3868091, at *2, *4–7, *12 (W.D. La. July 22, 2013). The Court finds Blue Hill's claim for injunctive relief frivolous for the detailed reasons stated in *Accident Insurance*, so it applies the *Brillhart* doctrine here. *See id.*

*Sherwin-Williams*, 343 F.3d at 388 (citing *St. Paul Ins. v. Trejo*, 39 F.3d 585, 590–91 (5th Cir. 1994)); *see also id.* at 390.[4]

The *Trejo* factors favor exercising jurisdiction over this declaratory-judgment action. In fact, the first factor "weighs strongly" towards assuming jurisdiction. *Sherwin-Williams*, 343 F.3d at 394. As noted above, there are no parallel state-court proceedings because Robertson's underlying suit involves different issues than those presented here. *Contrast* [1-1] at 2–3, *with* [1] ¶¶ 18, 21, 23. Because of this default-judgment posture, the record does not show that Blue Hill filed this action in improper anticipation of a suit by the defendants or engaged in impermissible forum-shopping. *See Sherwin-Williams*, 343 F.3d at 397, 399. So the second and third *Trejo* factors do not weigh against assuming jurisdiction.

As for the fourth *Trejo* factor, permitting Blue Hill to litigate coverage issues here would not create any inequities because insurance coverage is not at issue in Robertson's underlying suit. *See Ironshore Specialty Ins.*, 624 F. App'x at 168. The fifth and sixth *Trejo* factors also favor assuming jurisdiction. Nothing in the record reflects that this Court is an inconvenient forum. *See id.* And deciding this case

---

[4] *Brillhart* and *Wilton* both concerned staying a declaratory-judgment action in favor of pending parallel state proceedings. *See Wilton*, 515 U.S. at 281–82. So the Fifth Circuit has regularly stated that "[u]nder *Brillhart*, a district court 'should ascertain whether the questions in controversy between the parties to the federal suit . . . can be better settled in the proceeding pending in the state court.'" *E.g.*, *Sherwin-Williams*, 343 F.3d at 389 (alteration in original); *Ironshore Specialty Ins. v. Tractor Supply Co.*, 624 F. App'x 159, 164 (5th Cir. 2015) (per curiam) (alteration in original). But the Fifth Circuit's articulation of the *Brillhart* doctrine through the *Trejo* factors sweeps more broadly than this statement implies: A district court has discretion to dismiss a declaratory-judgment action based on the *Trejo* factors even absent pending parallel state proceedings, though the lack of such proceedings "weighs strongly against dismissal." *Sherwin-Williams*, 343 F.3d at 392, 394.

13

serves judicial economy given the lack of factual disputes and Blue Hill's briefing on the relevant legal issues. *See id.*; *see also* Mem. Supp. Mot. Summ. J. [17]. Finally, the seventh *Trejo* factor does not apply because the Court need not construe a state judicial decree to resolve any issues here. *See Ironshore Specialty Ins.*, 624 F. App'x at 168. In all, the *Trejo* factors favor assuming jurisdiction over this declaratory-judgment action.

      2. Right to Declaratory Relief

Having found that it may and should exercise its jurisdiction to decide Blue Hill's declaratory-judgment claim, the Court now finds that the well-pleaded facts in the [1] Complaint raise Blue Hill's "right to relief [against each defendant] above the speculative level." *Wooten*, 788 F.3d at 498 (citation modified). Since Blue Hill seeks a judgment declaring it has no duty to defend or indemnify Double W or Whitten under the [1-2] Policy, all of Robertson's claims must "fall outside the coverage of the policy." *Est. of Bradley*, 647 F.3d at 529 (citation modified). So the Court compares the facts alleged in Robertson's state-court [1-1] Complaint with the terms of the [1-2] Policy. *See id.*

Under Rule 8(a)(2)'s low threshold, Blue Hill's allegations permit the Court to conclude that the [1-2] Policy does not cover Whitten's conduct because he does not qualify as an "insured" relative to the allegations in Robertson's [1-1] Complaint. The [1-2] Policy defines an "insured" to include (1) the named insured, (2) certain persons using an "insured auto" with the named insured's permission, and (3) "[a]ny other person . . . but only with respect to the legal liability of that person . . . for acts

or omissions of any person otherwise covered under" the Policy. [1-2] at 14–15. Simply put, the third definition applies to anyone who could be held vicariously liable for an insured's conduct. *See Progressive Gulf Ins. v. Dickerson & Bowen, Inc.*, 965 So. 2d 1050, 1053 (Miss. 2007).

Double W and Robertson readily qualify as insureds: Double W is the named insured, and Robertson was driving an insured auto (the Kenworth). Since the [1-2] Policy lists Robertson as a rated driver, the Court infers he had Double W's permission to operate the Kenworth. [1-2] at 3–4; [1] ¶¶ 12, 16. So Whitten only qualifies as an insured regarding his vicarious liability for either Double W or Robertson's negligence. *See Progressive Gulf Ins.*, 965 So. 2d at 1053. Robertson's state-court [1-1] Complaint alleges only that Double W and Whitten acted negligently. [1-1] at 2–3. And although Whitten may have personal liability, Double W's LLC status means that Whitten has no vicarious liability for Double W's conduct. *See Lancaster v. Miller*, 319 So. 3d 1174, 1180 (Miss. Ct. App. 2021) (citing Miss. Code Ann. § 79-29-311(1)). Therefore, Whitten cannot qualify as an insured under the [1-2] Policy.

Neither does the [1-2] Policy cover Double W's potential liability to Robertson. Subject to an inapplicable exception for employees who perform household or domestic work, the [1-2] Policy excludes liability coverage for "bodily injury to . . . an employee of any insured arising out of: (i) that employee's employment by any insured[] or (ii) performing duties related to the conduct of any insured's business." [1-2] at 18–19 (citation modified). Under the [1-2] Policy, an

15

"employee" includes "a statutory employee" but not "a temporary worker." *Id.* at 10. And a statutory employee includes "any individual, other than an employer, who is employed by an employer and who in the course of his or her employment directly affects commercial motor vehicle safety," including "a driver of a commercial motor vehicle . . . ." 49 C.F.R. § 390.5 (2024); *see also* [1] ¶ 20.

Double W's [1-2] Policy lists Robertson as a rated driver, so the Court infers that Double W employed Robertson as a regular driver and not a temporary worker. *See* [1-2] at 3. And since Robertson's injuries occurred while driving a commercial motor vehicle,[5] the Court can infer that Robertson falls under the [1-2] Policy's definition of an employee. *See id.* at 10; § 390.5; [1] ¶¶ 7, 16. Finally, given that Robertson's injuries occurred while driving Double W's insured auto, the Court can infer that the injuries arose from Robertson's employment by Double W. *See* [1-2] at 4; [1] ¶¶ 7, 16. Because Double W is the named insured, the [1-2] Policy excludes liability coverage for any bodily injuries that Robertson suffered while operating the Kenworth. *See* [1-2] at 18. The lack of coverage for Whitten and Double W under the [1-2] Policy means that Blue Hill has no duty to defend either, and "[i]f there is no

---

[5] Both Kenworth tractor trailers listed on the [1-2] Policy qualify as commercial motor vehicles. *Compare* [1-2] at 4, *and* § 390.5 (defining "commercial motor vehicle" to include a vehicle with a gross vehicle weight rating of 10,001 pounds or more), *with VIN Decoder*, Nat'l Highway Traffic Safety Admin., https://vpic.nhtsa.dot.gov/decoder/Decoder?VIN=1XKWDB9X1VJ736851 [https://perma.cc/5PJF-ESD7] (last visited June 3, 2025) (showing a gross vehicle weight rating of 33,001 pounds and above), *and VIN Decoder*, Nat'l Highway Traffic Safety Admin., https://vpic.nhtsa.dot.gov/decoder/Decoder?VIN=1XKWDB9XXVJ744186 [https://perma.cc/L7MS-DAAH] (last visited June 3, 2025) (showing a gross vehicle weight rating of 33,001 pounds and above). The Court may take judicial notice of public records contained on government websites. *See, e.g., Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 519 (5th Cir. 2015).

16

duty to defend, . . . there can be no duty to indemnify." *Seneca Ins.*, 568 F. Supp. 3d at 665; *accord Fed. Ins.*, 850 F.3d at 198 n.6.[6]

### C. Discretion—*Lindsey* Factors

When determining whether to grant a default judgment, courts consider six factors:

> [1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893. Weighing the *Lindsey* factors, the Court determines that it should exercise its discretion to grant Blue Hill a default judgment.

First, the defendants have failed to appear or respond to the [1] Complaint, so no facts are disputed. Second, the defendants' defaults have substantially prejudiced Blue Hill by halting the adversarial process. The defendants' answers were due over six months ago, on December 27, 2024, and the clerk entered default against them on February 13, 2025. *See* [6]; [7]; [8]; Clerk's Entry of Default [12]. Given ample opportunity to respond, they have chosen not to do so. Third, the defendants' failure to appear or defend is clearly established in the record. Fourth, the record holds no evidence that the defendants' defaulted by good faith mistake or excusable neglect. Fifth, the defendants' failure to appear mitigates the harshness

---

[6] Moreover, because all three defendants defaulted, they have all admitted to the same well-pleaded facts. *See Escalante*, 34 F.4th at 492. Thus, granting a default judgment against each defendant will not conflict with the position taken by another defendant. *See id.* at 495; *see also Frow*, 82 U.S. (15 Wall.) at 554.

17

of a default judgment. And sixth, the Court is unaware of any facts that would cause it to set aside a default judgment.

   D.  Relief Sought

Since Blue Hill does not ask for damages, the Court need not hold an evidentiary hearing before granting a default judgment. *See James*, 6 F.3d at 310. Based on its analysis above, the Court has determined that it may and should enter a default judgment granting Blue Hill's requested declaratory relief. As for the boilerplate request for a permanent injunction in the [1] Complaint, the Court finds it frivolous. *See supra* note 3; *Accident Ins.*, 2013 WL 3868091, at *2, *4–7, *12. Blue Hill provides no arguments or authorities showing its entitlement to a permanent injunction or establishing the Court's authority to grant such sweeping relief. *See* [13]; [14]; [15]. Accordingly, the Court declines to grant a permanent injunction.

IV.   Conclusion

For the reasons stated above, the Court GRANTS Blue Hill's [13, 14, 15] Motions for Default Judgment. It DECLARES that the [1-2] Policy provides no coverage for claims arising from Robertson's August 23, 2023, automotive accident and that Blue Hill has no duty under the [1-2] Policy to defend or indemnify Double W or Whitten against any claims arising from that accident. The Court will enter a separate final judgment consistent with this Order.

SO ORDERED, this 9th day of June, 2025.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE
